UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

<u>In re: Michael S. Askenaizer</u>,
    Appellant

    v.

<u>Seacoast Redimix Concrete, LLC</u>,
    Appellee

<u>Seacoast Redimix Concrete, LLC</u>,
    Cross-Appellant

    v.

<u>Michael S. Askenaizer</u>,
    Cross-Appellee

Civil No. 06-cv-123-SM
Opinion No. 2007 DNH 041

**<u>O R D E R</u>**

Michael S. Askenaizer, the chapter 7 trustee ("the Trustee") for Charwill Construction, Inc. ("Charwill"), seeks to avoid two allegedly preferential payments made to Seacoast Redimix Concrete, LLC ("Seacoast").

Seacoast filed a motion for summary judgment on the issue, and a request for sanctions against the Trustee, before the bankruptcy court. The bankruptcy court denied judgment avoiding the two payments, but also declined to impose sanctions against the Trustee. This appeal and a subsequent cross-appeal followed.

Having carefully considered the matter, the decision of the bankruptcy court is vacated and remanded to the extent it relates to the contested payments.  As it relates to the denial of sanctions, the decision of the bankruptcy court is affirmed.

## Standard of Review

District Courts have jurisdiction to hear appeals from final judgments, orders, and decrees of the bankruptcy court.  28 U.S.C. § 158(a)(1).  In reviewing bankruptcy decisions, "the district court and the court of appeals apply the same standards of review that govern appellate review in other cases."  In re Hodes, 402 F.3d 1005, 1008 (10th Cir. 2005).

When appealed to a district court, a bankruptcy court's legal determinations are reviewed de novo.  In re Gonic Realty Trust, 909 F.2d 624, 626-27 (1st Cir. 1990); In re G.S.F. Corp., 938 F.2d 1467, 1474 (1st Cir. 1991).  The bankruptcy court's findings of fact, however, are accorded deference.  Factual findings made in the bankruptcy court remain undisturbed unless clearly erroneous.  See Briden v. Foley, 776 F.2d 379, 381 (1st Cir. 1985).  A factual finding is clearly erroneous when, although there may be evidence to support it, the reviewing court, after consideration of all evidence before it, is left

with the definite and firm conviction that a mistake has been made.  See In re McIntyre, 64 B.R. 27, 28 (D.N.H. 1986).  The bankruptcy court's imposition of sanctions, however, is reviewed only for abuse of discretion.  See In re CK Liquidation Corp., 321 B.R. 355, 361 (B.A.P. 1st Cir. 2005); In re Sylver, 214 B.R. 422, 429 (B.A.P. 1st Cir. 1997).

## Background

The facts relevant to this appeal are not in dispute. Seacoast provided Charwill, a contractor, with concrete for use in the construction of a wastewater treatment facility in the Town of Durham, New Hampshire.  Pursuant to N.H. Rev. Stat. Ann. ("RSA") § 447:16, the project was secured by a bond, guaranteed by St. Paul Travelers, to ensure that all laborers and suppliers would be paid.

Charwill made two regular payments to Seacoast for concrete materials provided – the first on August 26, 2003, in the amount of $6,652.00, and the second on October 22, 2003, in the amount of $10,026.00.  Charwill filed for protection under chapter 7 of the Untied States Bankruptcy Code on October 24, 2003.  The Trustee brought an adversary proceeding against Seacoast seeking

to avoid the two payments, as preferential, because they occurred within 90 days of Charwill's filing a bankruptcy petition.

Seacoast countered with a motion for summary judgment, arguing that it was a fully secured creditor pursuant to state law and that neither the lien nor the transfers were avoidable under 11 U.S.C. § 547(c)(6).  Seacoast also sought sanctions against the Trustee and his legal counsel under FED. R. BANKR. P. 9011(b).  The Trustee objected, asserting Seacoast had not established that it was a secured creditor and, even if that had been established, 11 U.S.C. § 547(c)(6) refers only to the lien and not the transfers.

The bankruptcy court granted summary judgment in Seacoast's favor, but on an alternative theory – reasoning that, because of the bond, Seacoast would have obtained the full value of Charwill's payments in the bankruptcy proceeding, had Charwill not made the payments before filing.  Accordingly, the court found the preference transfer test set forth in 11 U.S.C. § 547(b)(5) not met, and declined the Trustee's request to avoid

them.  The bankruptcy court also declined to impose sanctions on the Trustee or his attorneys.  These appeals followed.[1]

**Discussion**

I.   Avoidance under 11 U.S.C. § 547(b).

11 U.S.C. § 547(b) provides, in pertinent part, that a trustee in bankruptcy

> may avoid any transfer of an interest of the debtor in property--
>     (1)  to or for the benefit of a creditor;
>     (2)  for or on account of an antecedent debt owed by the debtor before such transfer was made;
>     (3)  made while the debtor was insolvent;
>     (4)  made-
>         (A) on or within 90 days before the date of the filing of the petition; or
>         (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
>     (5)  that enables such creditor to receive more than such creditor would receive if--
>         (A)  the case were a case under chapter 7 of [the Bankruptcy Code];
>         (B)  the transfer had not been made; and
>         (C)  such creditor received payment of such debt to the extent provided by the provisions of [the Bankruptcy Code].

To avoid a transfer, the Trustee must establish, by a preponderance of the evidence, each essential element of a

---

[1] Because the parties' briefs address only whether the bankruptcy court erred in considering payment sources other than the bankruptcy estate, this court does not review the merits of other arguments advanced by the parties in the bankruptcy court.

voidable preference.  <u>In re Ralar Distribs.</u>, 4 F.3d 62, 67 (1st Cir. 1993).  In this case, the bankruptcy court held that the two payments did not constitute preferential transfers because, even in a chapter 7 liquidation, Seacoast would have received 100 percent of the amount it was owed, because payment was guaranteed by the St. Paul Travelers bond.  Accordingly, the court reasoned, the Trustee could not show that Seacoast obtained more from the allegedly preferential transfers than it would have obtained from a distribution under chapter 7, thus necessarily failing to satisfy the test set forth in 11 U.S.C. § 547(b)(5).

   The Trustee argues that the bankruptcy court erred by considering a payment source outside the bankruptcy estate in constructing its hypothetical chapter 7 liquidation result – that is, calculating what Seacoast would have obtained in the chapter 7 proceeding.  Specifically, the Trustee asserts that the bankruptcy court's inquiry should have focused on the net effect upon the estate due to the preferential payments, or whether similarly situated creditors would obtain less from the estate because of the allegedly preferential transfers.  The Trustee points to <u>Palmer Clay Prods. Co. v. Brown</u>, 297 U.S. 227, 229 (1936), which explains that

> [w]hether a creditor has received a preference is to be determined, not by what the situation would have been if the debtor's assets had been liquidated and distributed among his creditors at the time the alleged preferential payment was made, but by the actual effect of the payment as determined when bankruptcy results.

The Supreme Court went on to more succinctly define a preference transfer as "[a] payment which enables the creditor 'to obtain a greater percentage of his debt than any other of such creditors of the same class.'"  Id.

Seacoast argues that the bankruptcy court's ruling was correct, citing a factually analogous case in which a bankruptcy court focused on a payment bond when it compared a creditor's preferential receipt with its potential chapter 7 recovery.  In re ML & Associates, Inc., 301 B.R. 195 (Bkrtcy. N.D. Tex. 2003). The court in ML & Associates, Inc. reasoned that the creditor's claim would have been paid in full either by the debtor or the bonding company, and noted that a commercially reasonable insurance company would proceed against the bankruptcy estate to recover any amount it paid to the creditor under the bond.  Id. at 202.  The creditor's claim against the bankruptcy estate in such a case would simply be replaced by the insurance company's subrogation claim for the same amount.  Id. at 202-03.  The creditor, the court concluded, received no more from the debtor

than it would have received from the bonding company, Id. at 203, and, on that basis, held that the requirements of 11 U.S.C. § 547(b)(5) were not satisfied.  Id.

Seacoast reads ML & Associates, Inc. as holding that if a creditor, who has been fully paid by a debtor within the preferential period, would have obtained full payment of the bankrupt's debt from any other source (i.e., not necessarily from the bankruptcy estate), then the preferential payment by the debtor is not avoidable under section 547(b).  That seems a strained reading, and, in any event, a doubtful legal proposition.

Under the correct approach, as explained in a different opinion, "the court must focus, not on whether a creditor may have recovered all of the monies owed by the debtor from any source whatsoever, but instead upon whether the creditor would have obtained less than a 100% payout in a Chapter 7 liquidation."  In re Virginia-Carolina Financial Corp., 954 F.2d 193, 199 (4th Cir. 1992) (emphasis in original; citation omitted).  The important inquiry is whether "the creditor received a greater percentage recovery on its debt [from the preferential payment] than it would otherwise have received had

it looked solely to distribution from the Chapter 7 estate for its payment." In re El Paso Refinery L.P., 171 F.3d 249, 253 (5th Cir. 1999). Put differently, "the [c]ourt must focus on whether the transfer of funds would have affected other creditors in a chapter 7 liquidation." In re Philip Servs. Corp., 2006 Bankr. LEXIS 3640, *35 (Bkrtcy. S.D. Tex. Dec. 21, 2006). Essentially, then, a court must consider not only whether the creditor obtained more from the preference payment(s) than it would have recovered in a chapter 7 liquidation, but also whether, as a result of the preference payment, the bankruptcy estate will be left with fewer assets to distribute among the other creditors than if the preferential payment(s) had not been made.

In a case like this one, where a creditor will be paid under a third-party bond should the debtor fail to pay, there generally will be no adverse impact on the estate's assets, because the bonding company, as subrogee, will likely be a secured creditor of the debtor with respect to amounts paid under the bond. See In re Philip Servs. Corp., 2006 Bankr. LEXIS 3640, *36-37 ("[a]lthough the court [in ML & Associates, Inc.] seems to overlook . . . Krafsur, the outcome is consistent with Krafsur if: (I) the party from whom the subcontractor actually or

9

potentially recovered had a security interest in the debtor's/estate's assets or if the third party had a right of offset against sums payable to the debtor, and (ii) if the payment of the subcontractor released that security interest or right of offset"). That is, if the debtor paid the creditor in full within the preferential period, that payment could be avoided, but not if avoiding it means only that the creditor will obtain full payment from the bankruptcy estate through a different means – e.g., as an effectively secured creditor. In such circumstances the end result is the same – the preferential payments can have no adverse effect on the equal distribution of assets available to creditors of the estate – the full debt will be paid, either because the debtor paid it within the preferential period, or because the creditor would be entitled to full payment from a third-party payee (e.g., a bonding company) and the bonding company, in turn, would be entitled to full payment, as subrogee, from the bankruptcy estate's assets (e.g., as a secured creditor).

Of course, if, in this case, St. Paul Travelers was required, under its bond, to pay Seacoast in full, but had no secured position vis a vis the bankruptcy estate's assets, then upon payment under the bond it would become merely an unsecured

creditor.  As an unsecured general creditor St. Paul Travelers would receive (as subrogee of Seacoast) less than full payment on Charwill's debt.  In that circumstance, the preferential payment(s) <u>would</u> provide Seacoast a greater recovery than it would receive in a chapter 7 proceeding.  The debtor would have paid out 100% preferentially while the bankruptcy estate would have paid out less than 100% to St. Paul Travelers, as subrogee, for the same antecedent debt.

   The outcome of this particular case, then, turns on whether the bond issued to Charwill by St. Paul Travelers was sufficiently secured by Charwill's assets (or, for some other reason it, or Seacoast, would have recovered full value from the bankruptcy estate in a chapter 7 proceeding).  The record developed in this appeal provides no reliable answer to that critical question.  The bankruptcy court's decision may well be sustainable, if, for example, St. Paul Travelers would have had a security interest in assets of the estate sufficient to guarantee recovery of 100 percent of what it would have paid Seacoast under its bond, had Charwill not paid Seacoast in the preferential period.  Otherwise, the order is not sustainable.

**Conclusion**

The bankruptcy court's order relating to the alleged preference payment is necessarily vacated and the case is remanded for further consideration.  The controlling comparison is between what the creditor, Seacoast, got paid, and what it (or its subrogee) would have been paid in a chapter 7 proceeding.

For the reasons given during the bankruptcy court's hearing on February 15, 2006, and in that court's written order dated February 15, 2006, the decision of the bankruptcy court related to imposition of sanctions is affirmed.

**SO ORDERED.**

_____
Steven J. McAuliffe
Chief Judge

March 29, 2007

cc:   David P. Azarian, Esq.
      John M. Sullivan, Esq.
      Joshua E. Menard, Esq.
      US Bankruptcy  Court – NH, Clerk
      Geraldine L. Karonis, Esq.